# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | |
|---|---|
| HEATHER ERIN WYLIE, | CV 13-53-BLG-SEH-CSO |
| Plaintiff, | |
| vs. | ORDER AND FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| MONTANA WOMEN'S PRISON, et al., | |
| Defendants. | |

Pending is Plaintiff Heather Wylie's Amended Complaint. *ECF 11.* In its prior Order, the Court found that Wylie's original Complaint violated Rule 8 of the Federal Rules of Civil Procedure. *ECF 8.* Wylie's allegations were vague and failed to state a claim upon which relief may be granted.

The vague 173-page Amended Complaint is not a significant improvement. Nonetheless, the Court will on this limited occasion disregard the Rule 8 violations and attempt to determine which claims are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief as required by 28 U.S.C. §§ 1915, 1915A.

1

Wylie is advised, however, that in the future the Court will enforce the length restrictions in the Local Rules and will strike any of Wylie's filings that are of excessive length. For example, the Local Rules provide that briefs in support of a motion and response briefs are limited to 6500 words, which is approximately 20 to 25 pages, depending on the typeface or handwriting.

## I.    ANALYSIS

The Court has liberally construed the following possible claims: (a) denial of access to the court (Counts 1, 8, 9, 10, 11); (b) retaliation (Counts 1, 3, 5); (c) denial of due process in disciplinary proceedings (Counts 1, 3, 4, 5); (d) unauthorized communications with defense counsel (Count 4); (e) nepotism (Count 6); (f) inaccurate information in Department of Corrections reports (Count 7); (g) deprivation of property without due process of law (Counts 7, 12); (h) delayed or interfered with mail (Count 9); (I) medical/ADA claims (Count 13); and (j) denial of medical parole (Count 14).

### A.  Denial of Access to Courts (Counts 1, 8-11)

Prisons must provide "a reasonably adequate opportunity to

present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (*citing Bounds v. Smith*, 430 U.S. 817, 825 (1977)). There is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. Instead, an inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis,* 518 U.S. at 351. Prisoners must allege facts sufficient to show: (1) a nonfrivolous legal attack on their conviction, sentence, or conditions of confinement has been frustrated or impeded, and (2) they suffered an actual injury as a result. *Lewis*, 518 U.S. 343, 353–55.

Wylie complains she has been denied access to the courts because Defendants confiscated and then mailed discs that contained her criminal file (Count 1), interfered with her appearance in her divorce case (Count 8), interfered with and opened her legal mail (Count 9), denied her indigent status (Count 10), and made it difficult for her to obtain postage, copies, and typewriter ribbon (Count 11).

These allegations fail to state a claim because there is no

allegation of what "nonfrivolous legal attack" Wylie may have been
attempting to make in her post-conviction relief efforts or otherwise.
Wylie failed to describe or explain what legal argument or arguable pro
se claim she would have presented if her computer discs had not been
confiscated, had she been given indigent status, or if she had provided
the supplies she alleges she was denied. *See Lewis*, 518 U.S. at 351.
"[L]ike any other element of an access claim[,] ... the predicate claim
must be described well enough to apply the 'nonfrivolous' test and to
show that the 'arguable' nature of the underlying claim is more than
hope." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002). While Wylie
need not allege that she "would have been successful on the merits had
[her] claim been considered," *Allen v. Sakai*, 48 F.3d 1082, 1085 (9th
Cir. 1994)), she must at least minimally describe the arguable basis of
the pro se claim she intended to pursue further. "[T]he complaint
should state the underlying claim in accordance with Federal Rule of
Civil Procedure 8(a), just as if it were being independently pursued."
*Christopher*, 536 U.S. at 417 (footnote omitted). This is because a
prisoner's right to access the courts does not include the right to present

frivolous claims.  *See Lewis*, 518 U.S. at 353 n .3.

Wylie also failed to sufficiently allege that she suffered an actual injury as a result of Defendants' actions.  An "actual injury" is defined as "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.  Wylie provides no explanation of how the confiscation of her computer discs, interference with her mail, denial of indigent status, or denial of certain supplies interfered with the presentation of her legal claims.  She was advised in the Court's prior Order (*ECF 8*) that she needed to alleged an actual injury.  She has not done so.  Further leave to amend would be futile.  Wylie's allegations of denial of access to the courts as set forth in Counts 1, 9, 10, and 11 fail to state a claim and will be recommended for dismissal.

Wylie also alleged that the prison interfered with her appearance at her divorce hearing and as a result she lost marital assets.  *Amd. Complaint-Count 8, ECF 11-1 at 48-59*.  Although Wylie may have suffered an actual injury by not appearing for her divorce action, the right of access to the courts "is not satisfied by just any type of

frustrated legal claim." *Lewis*, 518 U.S. at 354. It only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. *Id*. 354-55. As the divorce hearing was not a challenge to Wylie's conviction or her conditions of confinement, she has no constitutional right to access the courts in that proceeding. Count 8 also fails to state a claim as a matter of law and will be recommended for dismissal.

### B. Retaliation (Counts 1, 3, 5)

To state a claim for First Amendment retaliation in the prison context, a plaintiff must allege five elements: (1) a state actor took an adverse action against the plaintiff, (2) because of, (3) the plaintiff's protected conduct, (4) which chilled the plaintiff's exercise of her First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Liberally construed, the Court has identified two potential claims of retaliation. Wylie alleges she had knowledge of fraudulent activity occurring within the Montana Correctional Enterprises ("MCE")

program at the prison and "had done a 'production status' compilation"
that included all of the questionable items being manufactured by MCE
specifically for former Warden Acton[1] and various other MWP staff
members.  *Amd. Complaint-Count 1, ECF 11-1 at 2.*  Wylie alleges she
received a call presumably pertaining to this alleged questionable
activity in August 2011 and a few weeks later Kevin Mickeson fired her
from her job MCE, her computer discs relating to her criminal case were
confiscated, and she received a disciplinary report.  *Amd. Complaint-
Count 1, ECF 11-1 at 2.*  She also alleges that Warden Acton personally
recommended that Wylie be prohibited from being employed at the
prison where she would have access to computers.  Wylie alleges this
recommendation was done in retaliation and as a way for Warden Acton
to protect herself from "her own wrongdoings within MWP."  *Amd.
Complaint-Count 5, ECF 11-1 at 39.*  While it is not clear that Wylie
actually engaged in "protected conduct" regarding these allegations she
has stated enough to require a response from Kevin Mickelson and

---

[1]Acton was the Warden of the Montana Women's Prison at the time this
action was filed in May 2013.  The Court takes judicial notice that she resigned
that position effective July 1, 2013.

Warden Acton.

Secondly, Wylie alleges that she filed a grievance regarding Lt. Moorman's conduct on March 23, 2012 and on April 19, 2012 she received a write-up from Lt. Moorman in retaliation for filing the grievance. *Amd. Complaint-Count 3, ECF 11-1 at 19; Amd. Complaint-Count 5, ECF 11-1 at 36.* This claim will also be served upon Lt. Moorman.

### C.   Denial of Due Process in Disciplinary Hearings (Counts 1, 3, 4, 5)

Counts 1, 3, 4, and 5 are construed as allegations of denial of due process rights as it relates to disciplinary hearings held at Montana Women's Prison. The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). To state a claim for a due process violation, Wylie must allege (1) that she had a protected liberty interest and (2) was deprived of that interest without adequate due process. If there is no liberty interest at stake, the Constitution does not require any process, and the second element becomes irrelevant. *Meachum v. Fano*, 427 U.S. 215,

223-24 (1976); *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972);

*Erickson v. United States*, 67 F.3d 858, 861 (9th Cir. 1995).

In the prison setting, a liberty interest is recognized and protected only if state officials or employees take actions that either (1) affect the sentence imposed upon conviction in an unexpected manner, or (2) impose a hardship that is atypical and significant in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

In Wylie's case, the threshold requirement for showing a liberty interest is not met. Wylie is serving a twenty-year sentence for theft. *See* Civil Case No. 11-CV-67-BU-SEH, *ECF 5 at 2*. "Confinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum*, 427 U.S. at 225. Consequently, placement in any part of a Montana prison would not affect Wylie's sentence in an unexpected manner. Wylie argues that the disciplinary hearing at issue could effect her standing before the District Court and the Board of Pardons and Parole. *Amd. Complaint-Count 4, ECF 11-1 at 30* But, the effect of Wylie's

discipline on her parole prospects is "too attenuated" to establish a liberty interest. *Sandin*, 515 U.S. at 487. The first prong of the *Sandin* test for a liberty interest is not met.

The second prong of the *Sandin* test also is not met. Whether a hardship is "atypical and significant" depends on three factors:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (citing *Sandin*, 515 U.S. at 486-87). As a result of Wylie's disciplinary hearings, she lost her jobs, was placed in a different pod within the prison, was placed in pre-hearing confinement for 12 days, was required to participate in a "Level 4 therapeutic intervention," and could not work with computers in the prison. *Amd. Complaint-Counts 1, 3, ECF 11-1 at 9, 21*. The loss of certain privileges such as employment and computer access and placement in pre-hearing confinement for 12 days is not atypical or significant in comparison to inmates in protective custody or inmates whose placement has not yet

been determined. *Sandin*, 115 S.Ct. at 2301 (30 days disciplinary

segregation not "atypical" where no evidence that difference from other

kinds of segregation); *c.f. Wilkinson v. Austin*, 545 U.S. 209 (2005)

(placement in a supermax prison where inmates were deprived of

almost all human contact for an indefinite period of time and lost their

parole eligibility gave rise to a liberty interest).

Wylie has not alleged sufficient facts to show she had a liberty

interest in avoiding the discipline she received.  It is therefore

irrelevant whether she received adequate due process protections,

because she was not constitutionally entitled to due process.  Wylie's

due process claims as alleged in Counts 1, 3, 4, and 5 will be

recommended for dismissal.

## D.  Deprivation of Property without Due Process of Law

Prisoners have a protected interest in their personal property.

*Hansen v. May*, 502 F.2d 728, 730 (9th Cir. 1974).  An authorized,

intentional deprivation of property (one carried out pursuant to

established state procedures) is actionable under the Due Process

Clause.  *Hudson v. Palmer*, 468 U.S. 517, 532, n. 13 (1984) (*citing Logan*

*v. Zimmerman Brush Co.*, 455 U.S. 422 (1982)); *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985). But negligent and/or unauthorized intentional deprivations of property by a state employee do not "constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527, 535-44 (1981) (no due process violation where a state employee negligently lost prisoner's hobby kit), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Therefore, if a state employee loses or steals an inmate's property and the state provides a meaningful post-deprivation remedy, there is no claim under the Due Process Clause. The Montana Tort Claims Act, Mont. Code Ann. §§ 2-9-101, *et seq.*, provides prisoners an adequate post-deprivation remedy.

Wylie alleges that when she was taken to C-Pod and placed in pre-hearing confinement on April 19, 2012, her personal property was placed in storage. When her property was eventually returned, several items, including legal documents, were missing. On April 30, 2012,

Wylie sent a grievance itemizing her missing items of property. During the grievance process, Wylie indicated she was still missing 18 postage stamps, pre-stamped envelopes, typing paper, three manilla envelopes, a lined-legal pad, and Nike insoles. Wylie was reimbursed $9.18 for the lost property. *Amd. Complaint–Count 12, ECF 11 at 98.*

Wylie has only alleged that her property was lost or stolen. As set forth above, the negligent and/or unauthorized loss of property does not give rise to a due process claim. These claims will be recommended for dismissal.

Wylie's claim regarding the collection of the 10% DOC fee as alleged in Count 7 also fails to state a claim for deprivation of property without due process of law. Apparently, a state court judge has ruled that Wylie is exempt from the 10% fee. There is no need for further litigation on this issue. In light of that state court order, any collection of the fee would presumably be unauthorized. *See Civil Action 12-41, ECF 15-13 at 3.*

In addition, Wylie alleges that Defendant Linda Paul acquiesced on the 10% issue but stated that Wylie may have to pay that fee in the

future. It appears Wylie has not yet been deprived of any funds. Any claim that she might be subjected to this fee in the future is speculative and therefore not yet ripe for review. A claim is "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all[,]" or if it is "too speculative whether the problem [plaintiff] presents will ever need solving." *Texas v. United States*, 523 U.S. 296, 300, 302 (1998) (internal citation omitted).

Wylie also seems to be making a claim for lost property for the computer discs that were confiscated and for her lost marital estate. However, the computer discs were not lost–they were mailed out of the facility. Wylie has no claim for deprivation of property for the computer discs. Similarly, the claim regarding the loss of marital estate assets can only be construed as a denial of access to the courts claim–it is not a due process claim.

All of Wylie's lost property claims asserted here fail as a matter of law. Counts 7 and 12 will be recommended for dismissal.

### E. Mail

Prison inmates have a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam) (*citing Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). Nevertheless, prison officials "may adopt regulations which impinge on an inmate's constitutional rights if those regulations are 'reasonably related to legitimate penological interests.'" *Witherow*, 52 F.3d at 265 (*quoting Turner v. Safley*, 482 U.S. 78, 89 (1987)).

#### 1. Legal Mail

Wylie alleges in Count 9 that mail to and from the courts, to and from the Attorney General's Office, to and from opposing counsel, and to and from the Montana Bar was opened. *Amd. Complaint– Count 9, ECF 11-1 at 60-75.* Under the First Amendment, mail from an inmate's attorney, or prospective attorney, constitutes "legal mail" that, when appropriately labeled, is entitled to greater protection than other mail. *Wolff*, 418 U.S. at 576. But, "mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996). Similarly, mail to and from state agencies

does not constitute "legal mail" entitled to greater First Amendment protections. *O'Keefe v. Van Boening*, 82 F.3d 322, 325-27 (9th Cir. 1996) (holding that inspection of grievance mailings to state agencies did not violate the First Amendment).

Whether or not prison policy defines these documents as legal mail is irrelevant to this analysis. Prison officials may set a higher standard than that required by the First Amendment concerning the type of mail to be opened in an inmate's presence, but doing so does not elevate a violation of prison policy into a constitutional claim. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

The mail which was allegedly opened outside of Wylie's presence is not protected legal mail under the United States Constitution. These claims should be dismissed.

## 2. Delayed Mail

Defective mail-handling procedures may under some circumstances violate an inmate's First Amendment. *Lewis*, 518 U.S. at 346; *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977). But a temporary delay does not give rise to a violation of the First Amendment. *Crofton*

*v. Roe*, 170 F.3d 957, 961 (9th Cir. 1999) (*citing Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987) (emphasizing that "merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support . . . a cause of action grounded upon the First Amendment")).

Wylie has presented a chart listing alleged delays in her mail ranging from 3 days to 365 days between December 13, 2010 and August 28, 2013. She lists 15 instances of her mail being delayed for over a week before it was sent out. Most significantly, she alleges her mail to the Montana State Bar was never received by the Bar and that Yellowstone County Court denied a motion for summary judgment in one of her cases on February 21, 2012, but she did not receive the order until March 2013. *Amd. Complaint-Count 9, ECF 11-1 at 64.* Wylie has stated enough to state a claim under the First Amendment for defective mail handling procedures. Count 9 will be served on Director Mike Ferriter, Warden Joan Daly, Deputy Warden Robert "Bob" Paul, Linda Paul and Lt. Moorman.

## F.  Medical Claims

### 1.  Denial of Medical Care

Deliberate indifference under the Eighth Amendment involves the consideration of two elements:  "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need."  *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'"  *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (quoting  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

The second component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm."  *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998)(quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  This component "is satisfied by showing (a) a

purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 citing *McGuckin*, 974 F.2d at 1060.

Wylie alleges she has suffered from Multiple Sclerosis since November 2003. She alleges she has raised ADA issues with MWP and has been met with long-delays, avoidance and further indifference. *Amd. Complaint–Count 13, ECF 11-1 at 102.* She alleges she met with Annamae Sigfried-Derrick, the ADA Coordinator and was told to be patient. She also contends a number of her "special medical privileges such as being at the front of the medical line, shower chairs, Nike insoles, elevator privileges, life aides, extra property, and water bottle in the library were discontinued. She alleges Officer Russell told her, in front of the B-pod, on March 18, 2012 that her "special medical privileges" had ended. *Amd.Complaint-Count 13, ECF 11-1 at 102-109.*

In addition, Wylie alleges she was prescribed a medication for fatigue which was supposed to be administered twice daily, once in the morning and once at noon. Nurse Betty Hanson, however, told her this was not permitted and that the medication would be administered in

the morning and in the evening.  Wylie contends the drug is an "anti-narcoleptic drug" and a dose in the evening defeats the purposes of the prescription and use.  *Amd. Complaint-Count 13, ECF 11-1 at 104.*

Although Wylie has alleged a serious medical need, her only allegation sufficient to state a claim for deliberate indifference to that medical need is her claim that Nurse Hanson failed to administer her medication properly.  This claim will be served on Nurse Hanson.  All other denial of medical care claims fails to allege sufficient facts to support a claim for deliberate indifference to a serious medical need and will be recommended for dismissal.

## 2.  Americans with Disabilities Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To state a claim under Title II of the ADA, a plaintiff must allege four elements: (1) that she is an individual with a disability; (2) that she is otherwise qualified to participate in or

receive the benefit of some public entity's services, programs, or activities; (3) that she was either excluded from participation in or denied the benefits of the public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

As an initial matter, to the extent Wylie is suing defendants in their individual capacities, those claims must be dismissed. "[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). The proper defendant in a Title II claim is the public entity allegedly responsible for the discrimination. The term "public entity," as encompassed by Title II of the ADA, includes state prisons. *Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 210 (1998). A state official acting in her official capacity may be a proper defendant pursuant to an ADA Title II claim. *Miranda*

*B. v. Kitzhaber*, 328 F.3d 1181, 1188 (9th Cir. 2003).

Wylie indicates in her Complaint that she has Multiple Sclerosis and that, as a result, she has difficulty walking. For the purposes of this prescreening, this is sufficient to establish that Wylie may be a qualified individual with a disability. Liberally construed, it appears Wylie bases her ADA claims on allegations that prison officials took away her permission to go to the front of the medical line, did not allow her to have catheters on her person at all times, denied her a life aide, denied her a private shower chair, lost her Nike insoles, discontinued her elevator pass, and denied her access to a water bottle while in the library. The alleged failures to accommodate Wylie's disability may be sufficient to state an ADA claim. This claim will be served upon Warden Daly in her official capacity.

### G. Medical Parole

The Court's prior Order indicated that to the extent Wylie is challenging a denial of medical parole, those claims are barred by the *Heck* doctrine. *Order permitting Amd. Comp–ECF 8 at 13-14 citing Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). In her Amended

Complaint, Wylie clarifies that she is challenging the prison's interference with her appearance before the parole board.

In *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005), the Court held that prisoners' parole claims seeking a new parole hearing were cognizable under section 1983 because the relief sought would not necessarily "invalidate the duration of their confinement—either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Id.* at 79 (finding that where an inmate challenges the constitutional validity of the state parole eligibility, but seeks injunctive relief in the form of an earlier eligibility review or parole hearing rather than earlier release, the claim is cognizable under section 1983); *see also Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) (if prisoner wins and is entitled to parole eligibility hearing, this does not guarantee parole or necessarily shorten his prison sentence).

In Count 14, Wylie alleges Warden Acton did not present her request for a medical parole hearing to the Board of Pardons and Parole. Wylie provided her application for medical parole to the prison

on July 23, 2011.  On January 9, 2012, Wylie was told by prison officials that her medical parole had been denied.  Wylie requested a formal denial and on June 1, 2012 was told that MWP is "trying to get the paperwork."  On July 2, 2012, Wylie received a response from Warden Action indicating that her medical parole was "disapproved" because it did "not meet policy criteria."  *Amd. Complaint-Count 14, ECF 11-1 at 113.*  Wylie never received any paperwork from the Board of Pardons and Parole.  Wylie alleges the prison never sent her request for medical parole to the Board of Pardons and Parole.

Pursuant to Mont. Code Ann. § 46-23-210, the Board of Pardons and Parole may release persons on medical parole and medical parole may be requested by an incarcerated person.  Mont. Code Ann. § 46-23-210(1), (3).  The application, however, must be reviewed and accepted by the Department of Corrections before the Board may consider granting a medical parole.  MCA § 46-23-210(4).  Upon receiving the application from the Department of Corrections, a hearing panel shall hold a hearing.  Mont. Code Ann. § 46-23-210(5).

Given that Wylie's complaint is that Warden Acton did not

forward her application to the Board of Pardons and Parole, it is a cognizable claim under 42 U.S.C. § 1983 and Count 14 will be served upon former Warden Acton.

## H.  Remaining Claims

Wylie's claims concerning unauthorized communications (Count 2), nepotism (Count 6), and wrong information in a report (Count 7) are not supported by a citation to a federal statute, regulation, or case and fail to state a federal claim for relief.

Wylie's allegation that certain prison officials had conversations with her defense counsel (Count 2) fails to state a federal claim.  The mere fact that defense counsel talked with prison officials does not violate Wylie's constitutional rights.  To the extent Wylie contends that those conversations led to her inability to overturn her conviction, those claims are barred by the *Heck* doctrine.  *Heck*, 512 U.S. at 486–87.

Wylie has no right to a policy against a practice of nepotism, much less standing to enforce a prison's or a state's anti-nepotism policy. These allegations fail to state a federal claim for relief and Count 6 will be recommended for dismissal.

Finally, Wylie's claims that Lisa Grady with the Montana Department of Corrections provided wrong information in a supervisory authority report fails to state a claim. Wylie does not have a freestanding, constitutionally-protected right to the expungement of information from her prison records, even if she believes it to be inaccurate. *Sandin v. Connor*, 515 U.S. 472, 484 (1995). The Ninth Circuit has not found that prisoners have an independent right, grounded in the Due Process Clause, to an accurate prison record. *Hernandez v. Johnston*, 833 F.2d 1316, 1319 (9th Cir. 1987). Wylie's request for an accurate prison record, without more, does not implicate the protections of due process.

These claims will be recommended for dismissal.

## II.    CONCLUSION

The Court has considered whether Wylie's Complaint is frivolous, malicious, fails to state a claim, or seeks solely monetary relief from a defendant who is immune. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b). It has also considered whether Wylie has a reasonable opportunity to prevail on the merits. *See* 42 U.S.C. § 1997e(g). The Court concludes

that dismissal of Defendants Jo Acton, Kevin Mickelson, Michael Moorman, Mike Ferriter, Joan Daly, Robert Paul, Linda Paul, and Nurse Betty Hanson is not appropriate at this time. These Defendants must make an appearance on Counts 1, 3, 9, 13, 14 as set forth above. The Court makes no conclusions about the truth of Wylie's allegations or about the strength of her claims or of the evidence she might offer to corroborate them. The Court only finds that Wylie has said enough to require a response from these Defendants.

Wylie's claims regarding denial of access to the courts, denial of due process, unauthorized communications, nepotism, wrong information in reports, and denial of property without due process fail to state a federal claim upon which relief may be granted. These claims and Defendants Gloria Cowee, Annamae Siegfried-Derrick, Michelle Siegfried, Lisa Grady, Mike Webster, Mark Hartman, and Tricynda Russell will be recommended for dismissal.

Based on the foregoing, the Court issues the following:

## ORDER

1.  Pursuant to Fed.R.Civ.P. 4(d), the Court will request Defendants Jo Acton, Kevin Mickelson, Michael Moorman, Mike Ferriter, Joan Daly, Robert Paul, Linda Paul, and Nurse Betty Hanson to waive service of summons by executing, or having counsel execute, the Waiver of Service of Summons.[2]  The Waiver must be returned to the Court within **thirty (30) days of the entry date reflected on the Notice of Electronic Filing**.  If Defendants choose to return the Waiver of Service of Summons, the answer or an appropriate motion will be due within 60 days after the entry date reflected on the Notice of Electronic Filing for this Order, pursuant to Fed.R.Civ.P. 12(a)(1)(B). *See* 42 U.S.C. § 1997e(g)(2) (while Defendants may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone

---

[2]Defendants Gloria Cowee, Annamae Siegfried-Derrick, Michelle Siegfried, Lisa Grady, Mike Webster, Mark Hartman, and Tricynda Russell will be recommended for dismissal and are not required to file a responsive pleading at this time.

that plaintiff has a "reasonable opportunity to prevail on the merits,"

Defendants are required to respond).

2. The Clerk of Court shall forward the documents listed below to:

Legal Counsel for the
Montana Department of Corrections
P.O. Box 201301
Helena, MT 59620-1301

* the Complaint (*ECF 2*);

* Supplement to Complaint (*ECF 7*);

* Order permitting Amended Complaint (*ECF 8*);

* Amended Complaint (*ECF 11*);

* this Order;

* a Notice of Lawsuit & Request to Waive Service of Summons; and

* a Waiver of Service of Summons

Counsel for Defendants must file a "Notice of Appearance" as a

separate document at the time an Answer or Rule 12 motion is filed.

*See* D. Mont. L.R. 12.2.

3. Any party's request that the Court grant relief, make a ruling,

or take an action of any kind must be made in the form of a motion,

with an appropriate caption designating the name of the motion, served on all parties to the litigation, pursuant to Federal Rules of Civil Procedure 7, 10, and 11. If a party wishes to give the Court information, such information must be presented in the form of a notice. The Court will not consider requests made or information presented in letter form.

4. Pursuant to Fed.R.Civ.P. 5(a), all documents presented for the Court's consideration must be simultaneously served by first-class mail upon the opposing party or their counsel if the party is represented. Each party shall sign and attach a proper certificate of service to each document filed with the Court. The Certificate of Service must state the date on which the document was deposited in the mail and the name and address of the person to whom the document was sent. The sender must sign the certificate of service.

5. Wylie <u>shall not</u> make any motion for default until at least seventy (70) days after the date of this Order.

6. At all times during the pendency of this action, Wylie shall immediately advise the Court and opposing counsel of any change of

address and its effective date.  Failure to file a notice of change of address may result in the dismissal of the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).

Further, the Court issues the following:

## RECOMMENDATIONS

Wylie's claims regarding denial of access to the courts, due process, unauthorized communications, nepotism, wrong information in reports, and denial of property without due process fail to state a federal claim upon which relief may be granted.  These claims and Defendants Gloria Cowee, Annamae Siegfried-Derrick, Michelle Siegfried, Lisa Grady, Mike Webster, Mark Hartman, and Tricynda Russell should be dismissed with prejudice.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Wylie may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[3]  28 U.S.C. §

---

[3]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d). Therefore, three (3) days are added after the period would otherwise expire.

636.  Failure to timely file written objections may bar a de novo

determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit

Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a),

should not be filed until entry of the District Court's final judgment.

DATED this 16th day of April, 2014.


    /s/ Carolyn S. Ostby
United States Magistrate Judge

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SERVICE OF SUMMONS

TO:  Legal Counsel for the
     Montana Department of Corrections
     P.O. Box 201301
     Helena, MT 59620-1301

A lawsuit has been commenced by a pro se plaintiff against you or an individual you may represent. A copy the Amended Complaint is attached to this notice. It has been filed in the United States District Court for the District of Montana, Civil Action No. CV-13-00053-BLG-SEH-CSO. The Court has completed its pre-screening and concludes you must file a responsive pleading. *See* 42 U.S.C. § 1997e(c), (g)(2); 28 U.S.C. §§ 1915(e)(2), 1915A(a), (b).

This is not a formal summons or notification from the Court, but rather a request that you sign and file the enclosed waiver of service in order to save the cost of service by the U.S. Marshal's Service. The cost of service will be avoided if you file the signed Waiver of Service of Summons within 30 days after the entry date reflected on the Notice of Electronic Filing of the "Order to Serve Complaint by Requesting Waiver of Service of Summons," served with this Notice.

If you comply with this request and timely file the waiver, no summons will be served. The action will then proceed as if you had been served on the date the waiver is filed, except you must file an answer or appropriate motion before 60 days from the date the Order directing this Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

If you do not wish to waive service, please indicate this on the Waiver of Service of Summons form. The Court will, in turn, order the U.S. Marshal's Service to serve the complaint personally on you and may impose the full costs of such service.

                              /s/ Carolyn S. Ostby
                              United States Magistrate Judge

# WAIVER OF SERVICE OF SUMMONS

TO:   The U.S. District Court for the District of Montana

      The following Defendants acknowledge receipt of your request that they waive service of summons in the following action:  *Wylie v. Montana Women's Prison, et al.*, Civil Action No. CV-13-00053-BLG-SEH-CSO filed in the United States District Court for the District of Montana.  Defendants also received a copy of the Amended Complaint.  Defendants agree to save the cost of service of a summons and an additional copy of the complaint in this action by not requiring that the following individuals be served with judicial process in the case provided by Fed.R.Civ.P. 4:

_____;  _____;

_____;  _____;

_____;  _____;

_____;  _____;

      The above-named defendants retain all defenses or objections to the lawsuits or to the jurisdiction or venue of the Court except for objections based on a defect in the summons or in the service of the summons.  We understand judgments may be entered against the above-named defendants if an answer or motion under Fed.R.Civ.P. 12 is not served within 60 days after the date the Order directing the Notice of Lawsuit and Request for Waiver of Service of Summons to be sent was entered as indicated on the Notice of Electronic Filing.

      The following defendant declines to waive service.

_____;  _____;

_____;  _____;


_____        _____

DATE                                                    SIGNATURE

                                     _____

                                     PRINTED/TYPED NAME

                                     _____

                                     _____

                                     ADDRESS